UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **LAMONT BRYANT** § | |
| **AND IRENE ROMERO** § | |
| § | |
| *Plaintiffs* § | |
| § | |
| V. § | CAUSE NO. _____ |
| § | |
| **MADISON MARQUETTTE** § | |
| **PROPERTY INVESTMENTS, LLC** § | |
| **D/B/A THE TRAVIS** § | |
| § | |
| *Defendants* § | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Lamont Bryant and Irene Romero, Plaintiffs herein and respectfully file this their Plaintiffs' Original Complaint against Defendant Madison Marquette Property Investments, LLC D/B/A The Travis, and would respectfully show unto the Court the following:

### I. NATURE OF THE CASE

1. This is a lawsuit brought by Plaintiff Lamont Bryant and Plaintiff Irene Romero, business invitees, for their very severe physical and psychological injuries caused by an assault and attack inflicted by two or more gunmen which occurred in the parking garage of The Travis, a luxury hi rise apartment building located at 3300 Main Street in downtown Houston, Texas.

### II. PARTIES

2. Plaintiff Lamont Bryant (hereinafter referred to as "Plaintiff Bryant") is a resident of the state of Texas and resides in Collin County, Plano, Texas.

1

3. Plaintiff Irene Romero (hereinafter referred to as "Plaintiff Romero") is a resident of the state of New York and resides in Buffalo, New York.

4. Defendant Madison Marquette Property Investments, LLC d/b/a The Travis, is a limited liability corporation incorporated in the state of Delaware with its headquarters located in Washington, D.C.  The Defendant is the owner of a luxury apartment complex in downtown Houston, Texas located at 3300 Main Street, called The Travis.  The Defendant may be served by servings its registered agent for the state of Texas, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

### III.   JURISDICTION AND VENUE

5. Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C. § 1332(a)(1) in that the matter in controversy exceeds the sum of $75,000.00 and is between citizens of different states.

6. Venue is proper in the United States District Court for the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this lawsuit occurred in Houston, Texas.

### IV.   FACTS

7. On or about April 9, 2021, Plaintiffs were the guest of residents of The Travis hi rise apartments.  Plaintiff Bryant was visiting his business associate and close friend Mr. Maurice Bradshaw, who had recently moved into The Travis.

8. Plaintiff Romero was a personal friend of Plaintiff Bryant and also had a close friend named Ms. Juana Grant who had just moved into The Travis.  Plaintiff Romero was there at The Travis to assist her friend in decorating her new apartment.

9. Plaintiff Bryant's 2020 Chevrolet Corvette was also used by Mr. Maurice Bradshaw when they were both doing business or visiting the city of Houston. Therefore, Mr. Bradshaw provided Plaintiff Lamont's 2020 Chevrolet Corvette details to The Travis and in exchange, Mr. Bradshaw was issued and provided one garage parking sticker. This parking sticker was then affixed to Plaintiff Bryant's windshield to his vehicle.

10. On April 9, 2021, Plaintiff Bryant and Plaintiff Romero had gone to eat and to do some shopping at the Galleria. At approximately 6:00 P.M., Plaintiffs were returning to The Travis in Plaintiff Bryant's vehicle upon which was affixed the issued parking sticker allowing automatic access to The Travis garage.

11. The Travis hi rise apartment security gates are automatic overhead metal gates on the first floor and on the third floor where Plaintiff Bryant had parked his vehicle on the occasion in question. Both of these gates were fully automatic gates which were actuated by an electronic sticker that authorizes entrance and exiting of The Travis parking garage. Vehicles could neither get in nor get out of the garage without an electronic parking sticker affixed to the vehicle. So, if the security gates had been properly working on the occasion in question, the gunmen could not have gotten in the garage and, once in, they could not have gotten out without an authorized parking sticker on the front windshield of their car to automatically open the gates.

12. The overhead metal security gates on the first floor and the third floor of the garage were broken and left wide open by the Defendant on April 9, 2021. These gates had been open since at least April 2, 2021, a week before the attack on Plaintiffs. During that time, the Defendant made no effort to erect temporary security barriers or post additional security guards at the gates to check the identification of those seeking entrance to the garage and to provide at least some security to the residents and authorized guests, such as the Plaintiffs herein.

13. Finally, a couple of days after the attack, the Defendant deployed repairmen to fix the broke gates in question. The Defendant also belatedly sent out security notifications to their tenants warning about criminal activity in the area and admonishing their tenants to keep their eyes open to avoid similar attacks.

14. On April 9, 2021, after entering The Travis parking garage, Plaintiff Bryant backed his car into a parking space near the garage elevators. Plaintiff Romero got out of the car, with shopping bags in hand, and began walking toward the elevator. Meanwhile, Plaintiff Bryant walked to the back of his vehicle and was replacing the convertible hard top to his Corvette.

15. Suddenly, Plaintiff Romero saw two gunmen jump out of a red car which had pulled up in front of Plaintiff Bryant's Corvette. The two masked men, with guns drawn, first approached Plaintiff Romero. In her panic, Plaintiff Romero dropped the bags she was carrying and threw up her hands telling the gunmen that they could have anything they wanted. Then, Plaintiff Romero fell to the ground in a fetal position because she was emotionally terrified.

16. The two gunmen turned their attention to Plaintiff Bryant and attacked him with a hail of gunfire, not only shooting him, but also his car.

17. The gunmen jumped back into their red car and sped off through the parking garage and out the open security gates. Plaintiff Romero spotted another car following the red car after the shooting.

18. Plaintiff Romero immediately called 911 to report the incident and Plaintiff Bryant's immediate need for help. Both the ambulance and the Houston Police came to the scene and Plaintiff Bryant was rushed to the trauma center at Memorial Hermann Hospital. Plaintiff Bryant was struck in the upper left arm by a large caliber bullet which entered his left arm, left lung, heart region, right lung and lodged near his right armpit. Plaintiff Bryant's treating doctors

determined that they must leave the bullet in him because it was medically infeasible to remove the bullet without doing potentially life-threatening damage to his body. After being treated in the emergency room, Plaintiff Bryant was transferred to a room in Memorial Hermann Hospital and stayed there approximately one week. Now, Plaintiff Bryant is continuing medical treatment for his very substantial injuries in Dallas, Texas.

19. Both Plaintiffs are seeking psychiatric care necessary to treat the psychological trauma caused by the attack.

## V. CAUSES OF ACTION

20. Plaintiffs respectfully incorporate by reference all of the factual allegations and assertions made in paragraph IV above as if set out word for word into each of the causes of action set out below.

**A.  Premises Liability**

21. As authorized guests of residents of the Defendant, both Plaintiff Bryant and Plaintiff Romero were business invitees of the Defendant at the time of the attack. Plaintiff Bryant was an authorized guest of Mr. Maurice Bradshaw who was a resident of The Travis at the time of the attack. Plaintiff Romero was an authorized guest of Ms. Juana Grant, because was there to help Ms. Grant decorate her apartment. Thus, Plaintiff Romero was a business invitee of Ms. Grant at the time of the attack. Plaintiff Romero was assaulted by the gunmen who intentionally and knowingly threatened her with imminent bodily injury.

22. Plaintiff Bryant had an authorized parking sticker affixed to his car facilitating The Travis entrance because both he and Mr. Bradshaw used Plaintiff Bryant's car.

23. At the time of this occurrence, the Defendant was negligent in failing to repair the open security gates to its garage, which created a dangerous condition causing an absence of parking security in a known high crime area in downtown Houston.

24. This dangerous failure of the Defendant's security system was a proximate cause of the injuries suffered by Plaintiffs on the occasion in question. The Defendant knew or reasonably should have known of the dangerous condition caused by opened security gates.

25. Therefore, the Defendant failed to exercise ordinary care to protect its residents and their guests from the danger by either immediately repairing the security gates, or posting guards or other security personnel to guard its garage entrance which the security gates were inoperative, or at the least, warning the Plaintiffs of the danger posed by the open security gates.

26. Defendant failed to exercise that degree of care which would have been exercised by an owner and operator of any such apartment building and secure garage, exercising ordinary prudence under the same or similar circumstances and such failure to exercise ordinary prudence was a proximate and producing cause of injury to the Plaintiffs on the occasion in question.

**B.    Negligence**

27. For all of the reasons stated in paragraph V(A) above, the Defendant was negligent on the occasion in question and such negligence was a proximate cause of injury to the Plaintiffs.

**C.    Gross Negligence**

28. The Defendant's conduct in leaving the security gates open and failing to make any other effort to protect the safety of its residents and their guests was more than inadvertence or simply an error in judgment. Rather, it amounted to an entire want of care by the management of the Defendant so as to establish that its acts were the result of conscious indifference to the rights, welfare and safety of the residents of The Travis and their guests.

29. Therefore, Plaintiffs assert that the Defendant's gross negligence was a proximate cause of the grievous injuries, physical and psychological, of the Plaintiffs.

## VI. DAMAGES

30. Plaintiffs respectfully incorporate all of the factual allegations and assertions in paragraph IV and the causes of action set out in paragraph V as if set out word for word in paragraph VI.

A.   **Actual Damages**

27. The Plaintiff Lamont Bryant suffered actual damages as a proximate cause of the tortious conduct described above, as follows:

    a.  Physical pain and mental anguish sustained in the past;

    b.  Physical pain and mental anguish that, in reasonable probability, Lamont Bryant will sustain in the future;

    c.  Loss of earning capacity sustained in the past;

    d.  Loss of earning capacity that, in reasonable probability, Lamont Bryant will sustain in the future;

    e.  Disfigurement sustained in the past;

    f.  Disfigurement that, in reasonable probability, Lamont Bryant will sustain in the future;

    g.  Physical impairment sustained in the past.;

    h.  Physical impairment that, in reasonable probability, Lamont Bryan will sustain in the future;

    i.  Medical care expenses incurred in the past; and

    j.  Medical care expenses that, in reasonable probability, Lamont Bryant will incur in the future.

28.     The Plaintiff Irene Romero suffered actual damages as a proximate cause of the tortious conduct described above, as follows:

    a. Mental anguish sustained in the past;

    b. Mental anguish that, in reasonable probability, Irene Romero will sustain in the future;

    c. Loss of earning capacity sustained in the past;

    d. Loss of earning capacity that, in reasonable probability, Irene Romero will sustain in the future;

    e. Medical care expenses incurred in the past; and

    f. Medical care expenses that, in reasonable probability, Irene Romero will incur in the future.

**B.     Exemplary Damages**

29.     Because of the reckless and willful conduct by the management of the Defendant described in paragraphs IV and V above, the jury should award exemplary damages in an amount sufficient to deter and discourage such reckless conduct by the Defendant or others similarly situated, in addition to Plaintiffs' substantial actual damages.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE PREMISES CONSIDERED**, the Plaintiff Lamont Bryant and Plaintiff Irene Romero pray for the Court to award the Plaintiffs actual damages in an amount sufficient to fairly compensate the Plaintiffs as provided by law and for exemplary damages in an amount sufficient to deter the Defendant and others from such conduct in the future for both pre-judgment and post judgment interest, and for court costs and for such other and further relief as this Honorable Court may deem appropriate under the circumstances.

Date: May 18, 2021							Respectfully submitted,

**KIRK LAW FIRM, PLLC**

 /s/ Dana G. Kirk
Dana G. Kirk
Federal ID No. 6111
Texas Bar No. 11507500
kirk@kirklawfirm.com
440 Louisiana Street, Ste. 2425
Houston, Texas 77002
713-651-0050 office
713-651-0051 fax

**ATTORNEYS FOR PLAINTIFFS
LAMONT BRYANT AND
IRENE ROMERO**